UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ISABELLE ATEM, | Civil No. 13-903 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| ACCURATE HOMECARE, LLC, | |
| Defendant. | |

Michael A. Fondungallah, **FONDUNGALLAH & KIGHAM, LLC**, 2499 Rice Street, Suite 145, St. Paul, MN 55113, for plaintiff.

Gina K. Janeiro and Antone M. Melton-Meaux, **JACKSON LEWIS LLP**, 225 South Sixth Street, Suite 3850, Minneapolis, MN 55402, for defendant.

Plaintiff, Isabelle Atem, worked for defendant, Accurate Homecare, LLC ("Accurate"), for a little over one year before resigning in May 2011. Atem alleges that Accurate engaged in racial and national origin discrimination and pregnancy/sex discrimination in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A *et seq.* Atem also brings claims for hostile work environment, intentional infliction of emotional distress, and constructive discharge. Accurate moves to dismiss all of Atem's claims. The Court will grant in part Accurate's motion to dismiss because Atem failed to adequately plead claims for intentional infliction of emotional distress, hostile work environment, and constructive discharge. The Court will deny in part Accurate's motion to dismiss because Atem

adequately alleges claims for race and national origin discrimination and pregnancy/sex discrimination in violation of Title VII or the MHRA.

## BACKGROUND

Atem is a Cameroonian American nurse. (Compl. ¶¶ 2, 9, Apr. 19, 2013, Docket No. 1.) Atem began working for Accurate in December 2009, and during her employment she provided care exclusively for one patient, "GS." (*Id.* ¶¶ 9-10.) GS requires 24-hour nursing care by a registered nurse. (*Id.* ¶ 10.) A personal care attendant ("PCA") assists the nurse in caring for GS for four hours each day. (*Id.*)

## I.   ATEM'S DISPARATE TREATMENT ALLEGATIONS[1]

Atem alleges that in spite of being named employee of the month in February 2010 and February 2012 (*id.* ¶ 11), she was treated differently than Caucasian employees. For example, in August 2010, Atem left GS in the care of a PCA, Andrea,[2] for approximately twenty minutes. (*Id.* ¶ 12.) Accurate suspended Atem for not demonstrating proper delegation, placed her on a verbal performance improvement plan, and notified the Board of Nursing. (*Id.* ¶ 13.) Accurate did not suspend or report Andrea, a Caucasian woman, to the Board of Nursing. (*Id.*)

---

[1] Accurate argues that Atem's pre-November 2010 factual allegations are time-barred. *See* 42 U.S.C. § 2000e-5(e)(1); Minn. Stat. § 363A.28, subd. 3. The Court need not reach this issue for purposes of this motion to dismiss. However, to the extent that Atem contends that pre-November 2010 factual allegations are relevant to her surviving claims and part of continuing violation, Atem "must show that the acts . . . were not actionable as discrete violations of the applicable law." *Stolzenburg v. Ford Motor Co.*, 143 F.3d 402, 405 (8th Cir. 1998).

[2] Elsewhere in the Complaint, this PCA is identified as "Paula." (Compl. ¶ 43.)

In August 2010, Atem corrected the behavior of a different PCA, Robin, to better conform with patient care standards. (*Id.* ¶ 14.) Robin, a Caucasian woman, complained to Accurate that Atem was harassing her on the job and refused to continue to work with Atem. (*Id.* ¶ 15.) Accurate noted in Atem's file that she was not "getting along with other staff and care providers." (*Id.*) Accurate did not discipline Robin. (*Id.* ¶ 44.)

In October 2010, Atem called a third party, Pinnacle, to report that the facilities used by GS were not clean. (*Id.* ¶ 17.) When Pinnacle did not send someone to clean the facilities, Atem called a manager at Pinnacle. (*Id.*) The manager apologized and 'stated that the next time it happened" Atem should call him directly. (*Id.*) When another "incident" occurred, Atem called the manager. (*Id.*) A Caucasian employee of Pinnacle later called Accurate and complained that Atem was "demanding and condescending." (*Id.* ¶ 18.) Atem contends that this complaint was "documented against" her. (*Id.*)

Atem also generally alleges that Accurate did not "respond to requests for supplies made by African and African American employees" but that it did respond to similar requests by Caucasian employees. (*Id.* ¶ 48.) In the same vein, Atem alleges that she could not reach management by phone and "had to go through white employees to reach management." (*Id.* ¶ 60.)

II.   ATEM'S PREGNANCY AND RESIGNATION

In early 2011, Atem became pregnant. (*See id.* ¶ 19.) In April 2011, Accurate organized a care conference for GS. (*Id.* ¶ 20.) Atem was unable to attend this conference but alleges that during the conference "an [Accurate] manager said that if

pregnant nurses could not do their jobs, they would not be allowed to continue to work." (*Id.*)  Also in April 2011, one of Atem's co-workers informed her that Accurate was recruiting other nurses to work Atem's shift, and Atem was asked to train two other nurses to care for GS.  (*Id.* ¶¶ 21-22.)  During this same period, Atem alleged that another nurse who was pregnant was "taken off her work schedule."  (*Id.* ¶ 21.)

Atem alleges that a co-worker told her that her name was not on the following month's schedule.  (*Id.* ¶ 22.)  After receiving this information, Atem tendered her two week notice to Accurate on May 12, 2011.  (*Id.*)

### III.   POST-RESIGNATION

On May 15, 2011, Atem was scheduled to work from 7 a.m. to 7 p.m.  (*Id.* ¶ 23.)  After arriving at work, Atem began to feel ill, and she called Accurate and informed them she "was sick and needed to leave work."  (*Id.*)  Accurate did not send another nurse to replace Atem.  (*Id.*)  Atem called Accurate again around 1 p.m. and was told that they had been unable to find a replacement but were still looking for someone.  (*Id.* ¶ 24.)  When no replacement arrived, Atem called Accurate again shortly after 6 p.m. and stated that she really needed to leave.  (*Id.*)  Atem alleges that Accurate "informed her that she could leave if the client and the other nurse consented that she could leave."  (*Id.*)  Atem does not identify "the other nurse," but she alleges that "the other nurse consented" to her leaving.  (*Id.*)  Atem left around 6:15 pm.

On May 16, 2011, before her scheduled resignation took effect, Accurate removed Atem from the schedule "on the grounds that she had a poor job performance, and that

she had left a patient without prior approval." (*Id* ¶ 25.) Although Atem tried to contact Accurate to discuss her removal from the schedule, her calls were not returned. (*Id.* ¶ 26.) Atem alleges that she was "terminated for violating [Accurate's] policy." (*Id.* ¶ 46.)

## IV.   PROCEDURAL POSTURE

On November 10, 2011, Atem filed a Charge of Discrimination[3] with the Minnesota Department of Human Rights ("MDHR") asserting racial discrimination and pregnancy/sex discrimination. (*See id.* ¶ 8; Decl. of Gina K. Janeiro, Ex. 1, Charge of Discrimination, May 10, 2013, Docket No. 8.) The Charge was cross-filed with the Equal Opportunity Employment Commission ("EEOC"). (*See* Compl. ¶ 8.) Atem noted that the "discrimination was because of: Sex, Race" and she described herself as a "black female." (Charge of Discrimination at 1.) She further stated that her "sex (pregnancy) and race were factors in [Accurate's] actions" and alleged that Accurate had discriminated against her "in the area of employment on the basis of sex and race." (*Id.* at 2.) Atem also stated in the Charge that she "felt forced to give" Accurate her resignation notice because she "did not want an employment history of having been fired." (*Id.* at 1.)

---

[3] In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall. Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Here, Atem's Charge, filed with the Minnesota Human Right's Commission, is a public record. *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) (noting that the court had "previously held that an EEOC charge is a part of the public record and may be considered on a motion to dismiss").

On March 5, 2013 – before the MDHR or EEOC issued a decision – the MDHR issued a notice that Atem had withdrawn her Charge in order to exercise her right to seek redress through civil action. (Janeiro Decl., Ex. 2, May 10, 2013, Docket No. 8.) Atem also withdrew her EEOC Charge. (*See id.*)

On April 19, 2013, Atem filed her Complaint in this Court. Atem brings claims for racial and national origin discrimination and pregnancy/sex discrimination in violation of Title VII and the MHRA (Counts I-IV). Atem also brings claims for hostile work environment, intentional infliction of emotional distress, and constructive discharge (Counts V-VII).[4] Accurate seeks to dismiss Atem's national origin discrimination claim because Atem failed to exhaust her administrative remedies. Accurate requests that the Court dismiss the remainder of Atem's claims because she fails to state a claim on which relief may be granted.

## ANALYSIS

### I. STANDARD OF REVIEW

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *See, e.g.*, *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

---

[4] Apparently due to a typo, there are two Count IV's in the Complaint. The Court's count numbers, therefore, refer to the actual sequence of the counts in the complaint. Thus, the Court will treat Atem's claim for Hostile Work Environment as Count V and her claim for Intentional Infliction of Emotional Distress as Count VI.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Therefore, to survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## II.   EXHAUSTION

Title VII requires that before a plaintiff file a lawsuit alleging discrimination, she must file a timely charge with the EEOC or a state or local agency with authority to seek relief. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); 42 U.S.C. § 2000e–5(e)(1). Each incident of discriminatory treatment constitutes a separate "unlawful employment practice" for which the plaintiff must exhaust the administrative remedies. *Richter*, 686 F.3d at 851. However, "[a] plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that

are like or reasonably related to the substance of charges timely brought . . . ." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). Moreover, "the administrative complaint must be construed liberally in order to further the remedial purposes of applicable legislation." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002)

In her Charge, Atem alleged discrimination on the basis of race but did not explicitly allege discrimination on the basis of national origin. The Court concludes that Atem's national origin discrimination claims are reasonably related to the race discrimination claims brought in her Charge. The allegations for the race and national origin discrimination claims are virtually identical. Atem's national origin claims could be considered to have "grow[n] out of" her racial discrimination charge. *Id.* The Court will, therefore, deny Accurate's motion to dismiss Atem's national origin discrimination claims on the basis of exhaustion.

### III.   DISCRIMINATION

Accurate asks the Court to analyze Atem's discrimination claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). "The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *see also Ring v. First Interstate Mortgage, Inc.*, 984 F.2d 924, 927 (8th Cir. 1993)

(rejecting the prima facie case as a basis for Rule 12 analysis).[5] Thus, Atem's complaints "must satisfy only the simple requirements of Rule 8(a)." *Swierkiewicz*, 534 U.S. at 513.

### A.   Racial Discrimination

Atem alleges that she is the victim of racial discrimination in violation of both Title VII and the MHRA. (Compl. ¶¶ 40-56.) "The same analysis applies to both MHRA and Title VII claims." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Atem alleges that she is African American and that she was employed by Accurate for over a year. Atem further alleges that she was "treated differently by [Accurate] in its disciplinary proceedings because she is African." (Compl. ¶ 42.) Atem also alleges that she was treated less favorably than Caucasian co-workers because of her race. While her complaint is not perfectly clear, Atem appears to have provided examples of ways in which she was treated differently or less favorably. Accepting all of Atem's statements as true, as the Court must, and drawing all reasonable inferences in Atem's favor, the Court concludes that Atem's complaint satisfies the basic requirements of Rule 8(a). The

---

[5] *See also Bala v. Dep't of Conservation & Recreation*, No. 13-1127, 2013 WL 3359268, at *1-2 (4th Cir. July 5, 2013) (per curiam) (discussing the pleading requirement after *Twombly* and *Iqbal*); *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012); *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011).

Court will, therefore, deny Accurate's motion to dismiss this claim. The Court notes, however, that Atem will have to satisfy a more stringent standard of review to survive a motion for summary judgment or prevail at trial.

### B.     Pregnancy/Sex Discrimination

Atem also alleges that she is the victim of pregnancy/sex discrimination in violation of both Title VII and the MHRA. (Compl. ¶¶ 40-56.) As noted above, Title VII prohibits employers from discriminating against an individual "because of" or "on the basis of" sex. 42 U.S.C. § 2000e-2. "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy . . . ." 42 U.S.C. § 2000e(k). Atem alleges that she became pregnant after working for Accurate for about a year. Atem also alleges that she was treated differently after she became pregnant and that Accurate treated non-pregnant employees differently from pregnant employees. Again accepting all of Atem's statements as true and drawing reasonable inferences in her favor, the Court concludes that Atem has met the pleading requirements at the motion to dismiss stage. *See* Fed. R. Civ. P. 8(a), 12(b)(6). The Court again cautions Atem that she will have to meet a more stringent standard at the summary judgment stage.

### C.     Hostile Work Environment

Atem also brings a claim for "hostile work environment." (Compl. ¶¶ 58-62.) A plaintiff can bring a Title VII claim for race or sex discrimination in the form of a hostile work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986). Hostile work environment harassment occurs when "the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). The Eighth Circuit has explained that:

> To establish a claim of hostile work environment, a plaintiff must show (1) he or she belonged to a protected group; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based upon race [or sex]; (4) the harassment affected a term, condition, or privilege of his or her employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action.

*Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 933 (8th Cir. 2011) (quoting *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 910 (8th Cir. 2006). "The underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." *Green*, 459 F.3d at 910 (internal quotation marks omitted). "Not all unpleasant conduct creates a hostile work environment. Rather, the plaintiff must show that she was singled out because of her gender [or race], and that the conduct was severe and pervasive." *Williams v. City of Kan. City, Mo.*, 223 F.3d 749, 753 (8th Cir. 2000) (citation omitted)

In pleading her hostile work environment claim, Atem makes two allegations that are race-related: (1) that she was not treated "as [Accurate] treat[ed] other non-black employees" (Compl. ¶ 59); and (2) that she "had to go through white employees to reach management" (*id.* ¶ 60). Atem also alleges that when she was ill – potentially because of her pregnancy – Accurate did not timely find a replacement for her (*id.* ¶ 61) and that

Accurate removed pregnant women from the schedule (*id.* ¶ 59). None of the facts alleged in Atem's complaint would amount to "discriminatory intimidation, ridicule, [or] insult" that is "sufficiently severe or pervasive" to show that Accurate had "an abusive working environment." *Harris*, 510 U.S. at 21. Nor does Atem plead any facts that are consistent with the Court drawing a reasonable inference that Atem's working environment rose to the level of being hostile or abusive. Because Atem fails to adequately allege discrimination in the form of a hostile work environment, the Court will grant Accurate's motion to dismiss this claim.

## V.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Atem contends that Accurate is liable for intentional infliction of emotional distress for "complaining about nurses who were pregnant," for stating "that pregnant nurses could not perform their jobs" and for "disciplining Ms. Atem when she complied with [Accurate's] directives." (Compl. ¶ 64.) Atem alleges that she suffered severe emotional distress. (*Id.* ¶¶ 65-66.) Under Minnesota law, to make out a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct; (2) the conduct must be intentional or reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). The Minnesota Supreme Court has stated that an intentional infliction of emotional distress claim is "sharply limited to cases involving particularly egregious facts." *Id.* at 439. Further, to

be actionable, a defendant's conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.*

Although Atem alleges that "[t]he conduct by [Accurate] was intentional or reckless," (Compl. ¶ 65), she does not allege any facts to support this allegation. Moreover, Atem does not identify any conduct by Accurate that "passes the bounds of decency," *Hubbard*, 330 N.W.2d at 439. In short, Atem's allegations regarding Accurate's conduct are the type of "legal conclusion couched as a factual allegation" that the Court is not "bound to accept." *Twombly*, 550 U.S. at 555.

Atem's allegations that she suffered "severe" emotional distress are also inadequate. (Compl. ¶ 66.) Atem alleges that she suffered "sleepless nights, headaches, blurry vision, dizziness, and light headedness." (*Id.* ¶ 65.) Even accepting these allegations as true, they are insufficient to support a claim for intentional infliction of emotional distress. *See Besett v. Wadena Cnty.*, Civ. No. 10-934, 2010 WL 5439720, at *17 (D. Minn. Dec. 7, 2010) (collecting cases). None of these symptoms support Atem's allegation that her distress was "so severe that no reasonable person could be expected to endure it." (Compl. ¶ 66.) *See Hubbard*, 330 N.W.2d at 440 (finding the evidence insufficient to support an intentional infliction of emotional distress claim where the plaintiff alleged that he had been depressed, vomited, had stomach disorders, a skin rash, and high blood pressure). Because Atem fails to adequately allege a claim for intentional infliction of emotional distress, the Court will dismiss this claim.

## VI.   CONSTRUCTIVE DISCHARGE

Atem also brings a claim for constructive discharge, alleging that "she was going to be terminated" and that Accurate had "the intention" of firing her because she was pregnant. (Compl. ¶¶ 68-74.) "A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable." *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996). To act reasonably, however, "an employee has an obligation not to assume the worst and not to jump to conclusions too quickly." *Id.* "[C]onstructive discharge claims fail as a matter of law where the employee has not given the employer a reasonable opportunity to correct the intolerable condition before the employee quits." *Lisdahl v. Mayo Found.*, 633 F.3d 712, 719 (8th Cir. 2011).

In this case, Atem tendered her resignation after (1) finding out that Accurate had hired new nurses whom she had been asked to train, (2) overhearing another nurse ask a patient when Atem would be replaced, and (3) hearing that another pregnant nurse had received a reduction in hours.[6] (*See* Compl. ¶¶ 69-71.) Atem fails to allege any facts that would support a finding that the conditions of her employment were intolerable. *See Tidwell*, 93 F.3d at 494. Nor does Atem allege any facts that support an inference that she gave Accurate an opportunity to correct the conditions she objected to prior to resigning. *Lisdahl*, 633 F.3d at 719. The Court concludes that Atem fails to state a claim for constructive discharge, and it will grant Accurate's motion to dismiss this claim.

---

[6] Atem also alleges Accurate's failure to find her a replacement on May 15, 2011 supports her constructive discharge claim. (Compl. ¶ 72.) But Atem had already tendered her resignation on May 12, 2011. (*See id.* ¶ 22.)

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Accurate Homecare, LLC's Motion to Dismiss or, Alternative, Summary Judgment [Docket No. 4] is **GRANTED in part** and **DENIED in part**, as follows:

**1.** The motion is **GRANTED** with respect to Atem's claims for hostile work environment (Count V), intentional infliction of emotion distress (Count VI), and constructive discharge (Count VII).

**2.** The motion is **DENIED** with respect to Atem's claims for pregnancy discrimination and race and national origin discrimination (Counts I-IV).


DATED:  September 25, 2013                    ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                  United States District Judge